Good morning, Your Honors. Jason Carr, appearing on behalf of Petitioner Appellant Jerome Brown. The primary issue I want to discuss today is the first assignment of error articulated in the opening brief, which is the Batson issue. And this really comes down to a particular Batson issue. The question being, did the Nevada either trial court or state appellate court ever engage in the required third-step Batson analysis? This is not a question of, is there clearly established federal laws articulated by the Supreme Court? The Supreme Court has set definitive standards from the beginning of the Batson v. Kentucky case, 1986, most recently in Miller, L. Edrick. What these could – what Batson itself says is that the trial court is required to engage in the sensitive, in-depth analysis of whether or not the proffered race-neutral reasons, basis for the preemptory strikes proffered by the prosecutor are evidence or pretext for intentional discrimination. And that there's a variety of mechanisms that the Supreme Court has instructed the trial court to rely upon in this endeavor. One of those mechanisms is, are the proffered excuses fantastical or are they implausible? If they are, then the court needs to determine whether or not the prosecutor is credible. Has credibility been undermined because the proffered excuses don't really pass the witness test? That's a particularly salient point in this instance because one of the jurors, Angela Martin, that was struck, one of the African-American jurors, had been a grand juror before. She had served on a grand jury. She had served on another jury. She had experience acting as a juror. And for the Court's reference, her – the ploy juror, the guy that accursed her in the context of her 20s or 21s. The prosecutor struck her, and his reasons for doing that, he proffers. He said that she responded inappropriately to questions on two or three occasions, but he could only remember one. And the specific example that he gave is this question by the Court that you work for the Federal Government, she said United States. Previously, she had stated that she worked for the Post Office of the Literary Area. The prosecutor proffered this as an inappropriate response to a question. The problem, of course, with that, with the prosecutor's contention there is that there's nothing wrong with her response because her response is correct, that this is a peculiarity of working for the Postal Service, is that they indeed are employees of the United States Government, but they are not Federal employees in the sense that I am, under the Postal Reorganization Act. You know, that's just real obvious looking at it now and looking backwards on a cold record, but as you know, these things go down in a couple of seconds. Was any of this kind of explored with the State trial judge at the time? Well, the defense attorney did proffer the objections and went into some discourse on E.R., E.R. 36, challenging the basis of the prosecutor's objections. And this is where the crux of the reasonable application, AEDPA standard, error, trial court, State appellate court error, is that you don't need to do that. I mean, I guess what I'm really saying is, when you look back on a cold record and you say, oh, her answer wasn't really screwy, I mean, in fact, it was technically correct, but the prosecutor can have heard it in context somewhat differently. The trial judge is there, he listens, and he says, you know what, I don't think that there's any intentional discrimination here. It's a race-neutral reason. Maybe on a cold record, not technically to, I mean, as good as he thought it was. But that's what the trial judge finds. Nevada Supreme Court goes through the whole thing. They can go through it on a cold record and they say, no intentional discrimination. So why is that an unreasonable application of Batson? And it's an excellent question, Your Honor. And I'd be in a much different posture at this point if the trial court had actually engaged in that endeavor, if the trial court had actually engaged the plausibility of the prosecutor's excuses, proffered excuses, and made a determination. He never did. The trial court never did. He wasn't pressed to, but apart from that, we review the Nevada Supreme Court's actual determination. And it did go through all the steps. So why is its determination an unreasonable application of Batson? Because the trial – and I would submit that the Nevada Supreme Court determination did not go through the Batson third-stage analysis in a proper manner, did not engage in – Well, it did. It may be one you disagree with. But it explicitly did. It said the next question is whether appellant proved the explanations to be pretextual. And its conclusion was, nah. So, I mean, you disagree with that, obviously, but the question isn't whether it was right, wrong, or indifferent. The question is whether it was an unreasonable application of Batson. I would submit that the error there is that the Nevada Supreme Court put the onus on Brown to come forward with evidence of discriminatory intent. Well, yes. And said you simply didn't do it. But they never engaged in any of the third-step Batson analysis that's required by either the trial court or the State appellate court. And that's what this – this – Well, it says appellant simply alleges that they were pretextual, but hasn't demonstrated how. We, therefore, conclude the district court, meaning the State trial court, did not err in overruling the objection to the jury panel. And like I said, I appreciate that you disagree with that. But the question for us is whether that determination is an unreasonable application of Batson. The – and I understand your question, Your Honor, and it's the crux, really, of the issue here and what the State relies on heavily. Well, sure, because that's the – that's what we have to answer. So why – why do you think it is? Well, I would point to this Court's precedent in United States v. Holanis. And what the – my broad argument here is that the trial court never engaged in a third-step proper Batson analysis, and the Nevada Supreme Court merely affirmed that lack of analysis. I just read you what it did. It didn't – it did not – it explicitly – let's put aside whether the trial court actually did a third step or not. Let's assume it did not. Absolutely, no question, did not. The Nevada Supreme Court explicitly says, goes through step one, well, which was unnecessary, step two, and then it says the next question is whether the explanations are pretextual. And it concludes no. So the question is, why is that an unreasonable – not wrong, but it's not – I mean, not one that you disagree with, but why is it an unreasonable application of Batson? My – my answer to that is if you look at, especially in this Court's recent decision in Kessler v. Cambrough, part of the Batson analysis is not simply a determination that the prosecutor's reasons were plausible or race-neutral, but at some point in the proceedings, the State court proceedings, there has to be the sensitive in-depth inquiry required by Batson, and that the court here is making a simple if-safe-dict-state determination. Appellant simply alleges they were not in the case. Kagan, because the appellant, which would have been your client at the time, didn't show anything that suggests pretext. But one minor point I'll make here is that this briefing that was done in this case was not full of briefing. It was based on this Nevada fast-track system where there's no argument, no full briefs. It's somewhat disingenuous to say you didn't demonstrate it to us, but they never gave them an opportunity. The demonstration occurs in the trial court, right? The record's in the trial court. You can't make a new record, okay? So you look back at the record that was made in the trial court and you ask whether the Nevada supreme court's take on that record was an unreasonable application of facts. And your answer is yes, it was. It is because it never, at no point did the Nevada State courts ever engage in the sensitive inquiry required under Batson. They made, simply made a determination without looking at the evidence. Kennedy, your answer is that when Judge Reimer read you about the, what the Nevada supreme court did, you don't, do not believe complies with the obligation to conduct a sensitive inquiry into such circumstantial and direct evidence of discriminatory intent as may be available. That is correct. Let me ask a follow-up question. Go ahead. If that's correct, what would a sensitive investigation have done? Would it have said, oh, this United States Federal thing, that's silly. So it's obviously pretextual. Is that what you would have had it do? Or something else? There's that. That's one issue. The other issue is the prosecutor said, well, two or three times she said things that didn't, that her responses were somehow inappropriate. But if you look at her void year, that's not true. I mean, the prosecution comes up with this idea that the fact that she said that she thought her criminal case wasn't handled well, but she doesn't hold that against the State, that somehow that's an inappropriate response. It's sort of 11th hour justification they have now. But as the magistrate court found, and I will note that the magistrate's courts R&R, and this case is the first time that anybody ever engages in the Batson third step inquiry, is when we get to Federal court, the magistrate court actually looks at the void year, it looks at the jury information sheets, it evaluates the plausibility of the prosecutor's request. Yeah, as if it were on direct review, and that's the problem. Well, and that is the Batson error, is that if the trial court had done the inquiry or even if the Nevada Supreme Court had done the inquiry and reached an adverse determination, a determination adverse to my interests, I would be at, it would be, I'd have great difficulty proving that was an unreasonable application of Batson. It's not my issue. My contention is butchers here because they never did it. It never occurs until we get into Federal court. And once it occurs in Federal court, the only judge who engages in this analysis finds there's evidence of pretext. And I see I'm out. I'm out of time. Thank you. Good morning. May it please the Court. My name is Vic Schulze. I'm a senior deputy attorney general in the State of Nevada. I apologize this morning. I've got a little bit of a cough. I would point out that the district court judge, the U.S. district court judge came up with the same conclusion that the Nevada Supreme Court came up with, and that was that there was no pretext specifically regarding jurors Martin and Thrower. Regarding juror Martin, the Let me ask you first. Do you believe that either the trial court or the Nevada Supreme Court complied with what we just described as the obligation under Batson's third step? State courts must review the record to root out any pretextual make-wait justifications for race-based strikes? Yes, I do, because Where do we find that effort to root out any pretextual justifications? As I read the Nevada Supreme Court order, which in this case was the order disposing of the direct appeal, that's at EOR 53, and as I read that, the Nevada Supreme Court reviewed the record in this case. I would also point out that when Judge Bonaventure, the district court judge, was in the courtroom, and I back up just for a minute and point out under Hernandez that there's extra, we have to go an extra mile to give credibility to the observations of the district court judge in this case, and the district court judge was the one, Judge Bonaventure in Las Vegas, who observed those proceedings, listened to the answers, and he was the one who was able to look at the body language and hear the voice. He's the only one in this matter who has not been dealing with this only from the cold record. Isn't that the case in every Batson case? I'm sorry? In every Batson case, there's been a trial judge who's looked at it. But the U.S. Supreme Court in Hernandez said there's an extra measure of deference that's granted because it's essentially a question of, the issue of pretextuality, more than anything else, is the ultimate issue of fact in this case. And what the U.S. district court judge said in this case was that Brown had not shown by clear and convincing evidence that the state courts had made an error on that issue. He's got a high burden in this case. This case will be controlled by the standards of review because the standard of review under AEDPA for errors of fact that are made by the state court is clear and convincing. And when the U.S. district court judge reviewed the report and recommendation that was made by the magistrate in this case, what he found was the magistrate's review of the record was not complete. It was simply not correct, for example, that in Martin's case, you get into this, do you work for the federal government, do you work for the United States? A lot of her questions as a prosecutor, a lot of her answers concern me a lot more. For example, there was a question to her, have you ever been a victim of a crime? And her answer in this respect, to me as a prosecutor, was very confused and very troubling because... But you can't rely upon a reason that wasn't articulated at the time, can you? I cannot, but I would suggest that it was articulated at the time because what the prosecutor said was there were two or three answers that she gave that he was suspect of and he had some concerns with regarding the confusion. He was specifically able to remember one, but all of the reviewing courts, as I read these orders, have found that that was enough of an articulation to go into the entirety of her questions to see if there was some confusion. And I think that's probably correct. The issue as to whether or not she'd been a victim of a crime goes to the issue of whether... I think she was inconsistent as to whether or not she was going to blame the state of Nevada for the way that other issue was handled. On the one hand, she said, when she was asked, were you satisfied with the way the officials handled that crime? She apparently was shot in the leg by a home invasion or a burglary. She said, well, somewhat. It could have been handled better. Then she turned around one or two questions later and she said to Judge Bonaventure, I don't blame the authorities for the case. Now, I'd be concerned about that and I think it goes to the two... the two questions that this prosecutor had said gave him some concern as to her confusion. And this goes to the heart of... I don't take your point from that. When somebody says, well, it could have been handled better and then sort of thinks, well, no, I don't want to cast aspersions, what's wrong with that? I don't understand. I see inconsistency in that response because on the one hand she's saying it was not handled well and I'm paraphrasing conceitedly. She says it was not handled well by the state authorities. On the other hand, she's saying I don't hold it against the state authorities. I think those are incompatible responses because as a victim of crime I think she does hold it against the state when she says they didn't handle this case very well. I was the victim. This guy was in my house. Now, I think a comment by Judge Reimer I think goes to the heart of this whole issue. This is a fast sort of... What was the question? I'm sorry? The question by Judge Bonaventure to the exact question about were you satisfied or... The question was have you ever been a victim of crime? Yes. I'm at EOR 53. I'm sorry, it might be the SEOR. Is this the appellant section of the record? I believe it is, yes, sir. 53? I have it down as 53. One problem is we have a couple of different EORs in this case. The question is were you ever a victim of crime? And the answer was that she had been. There had been a home invasion or a burglary. A man had been in her house and the judge asked her were you satisfied with the way that case was handled by the authorities? Her response was... Were you satisfied with the way... We were satisfied with the way the handle was handled. And she said her response was somewhat. It could have been handled better and then one or two questions later Judge Bonaventure asked her do you hold that against the state? And she said no, I don't. She said she could be a fair witness. I would be concerned as a prosecutor that that's an inconsistent answer. I would... And what else do you have? The confusion on who she worked for I think was a problem. United States, United States Post Office? United States versus Federal Government. I think there's... I can't go too far afield because I'm limited to what the prosecutor said. But I think there's something else going on here with her questions and answers that relate to the confusion. I think there's a certain hostility that's coming out. I think it's clear I'm interpreting, but I think it's clear from the record she simply does not want to serve. Maybe it's because she'd been on that grand jury. Part of the problem here is that this is such a fast process and Judge Reimer commented on that this voir dire is so fast these attorneys and this judge are giving each one of these people three or four or five minutes to determine what we think their attitude is and the consistency of their answers. And according to the Batson case, this is supposed to be a quick process. The Batson challenge is supposed to be a quick process in the middle of this jury selection to answer some of these questions. This is a quick process. Sure, we understand that. But you still have Batson you still have to comply with Batson so that's what we're looking at. The issue here that was found by the judge who was there, that was affirmed by the Nevada Supreme Court and then reaffirmed by the U.S. District Court was to the issue on the pretextuality that there simply was no pretextuality I'd point out that as regards juror thrower, the U.S. District Court found that in fact the concerns that were expressed by the prosecutor in fact were supported by the record. I will concede that in the Martin case, this record this is not the clearest facts for really really bad answers. Thrower's issue I think is easier to deal with. But I think there's sufficient factual support for juror Martin's inconsistent answers. I think that relates to a hostility that came out in her answers that wasn't cited by the prosecutor. I think it's part and parcel. You talk about nuance and all this but that's not in the record of the case. And we are far removed from that. What's the record of the case is the questions and the answers. And you may be quite correct in your interpretation of the nuance but the trial court did not say she was hostile. And usually in the Batson challenge I've seen, she seemed hostile to me. And the prosecutor did not say that too. I think that the confusion I think part of the confusion and the inconsistency in her answers comes from the fact that most of her answers were single word answers. And I think because I think that reflects her attitude and I think that's perhaps part of the issue as to why she came across sounding confused and inconsistent. But I think there is enough there that the finding that there was not pretextuality I think is supported. Now when she was asked a question about her prior case, the first one, she was never asked anything about whether the authorities did it properly, was she? She was asked whether or not the question was, was the case handled. Handled? Were you satisfied with the way the case was handled? Or resolved? I thought it was handled. Yeah, well it was resolved. Okay. And it had nothing to do with did the authorities handle it properly. The question was. I think there's a reference in there to the DA. Yes. The question was, was that did you have to go to court? Yes. Was that resolved satisfactorily for you? Maybe by a jury? Somewhat. You say somewhat. I think it could have been better. Could have been better. Was the DA not satisfied? No. Now what's wrong with that? I think it's inconsistent because I think it shows on the one hand as a victim of crime that she was a victim of crime and a violent crime and there was a process that was initiated by the state, an official process initiated by the state. She said I don't like what happened in that process. I am unsatisfied. On the other hand, she says I don't hold it against the state. I see as a prosecutor an inconsistency. Maybe she was mad at the judge for having to offend. Or the jury. Conceitedly. I don't think it's I think the question and answer. I think that's a good reason to disqualify her. I don't think the issue Victim of a crime. No, no, no. I don't think the issue here isn't whether or not there's a basis for disqualifying her. The more, the core issue here is whether or not that's sufficient to overcome this issue of pretextuality and I think it is because as a prosecutor, I can see the prosecutor hearing that at trial thinking that's inconsistent because I'm hearing lingering dissatisfaction with the way this process works. And yet on the other hand, she says no, I don't hold it against the D.A. As the D.A. at trial that day I would be thinking she's holding this against me. I don't believe what she would have said. Here's why I didn't. I you would have articulated all of those reasons. She seemed hesitant. She seemed hostile. She expressed dissatisfaction with the process. This prosecutor didn't do it. The trial judge didn't rely on it. Right. So the issue here. She put in an opinion for example, citing that reason, we're just going to be dead wrong, aren't we? The issue here that I think the record limits us to at this point is inconsistency and United States and post office. Well, I think there are three or four questions. I agree with the prosecutor. I think the United States and post office issue was one of those but I think there were inconsistencies in these other answers. I think they're related to hostility but you're absolutely correct. This issue of hostility is not in the record. I can't rely on that now because the prosecutor didn't cite to that but I think these other issues impact the issue of the consistency and her ability to respond to those questions. Thank you. Thank you, Jeff. I know I don't have really any time for rebuttals but I just would like to briefly just point out a factual error and the government's answering brief so I'll just very briefly because it's important to me because the government represents that I made concessions that I did not make. On footnote 12 of their answering brief, they say that I concede that Angela Martin's answer United States is wrong and that is completely contrary to what I asserted. In fact, I went through the history of the Postal Reorganization Act and pointed out that her answer was in fact correct and no time did I ever say her answer was incorrect in that concession. I take umbrage with them attributing a concession that I never made. The same thing on answering brief 14 when they say I concede Thrower filled out his information sheet wrong is directly contrary to the assertions both myself and the magistrate judge found which is that almost all, a lot of the clerical sheets were an error and rather than this being a vast conspiracy where everybody is filling them out incorrectly, the more plausible explanation is that there was an error in the production of the juror information sheet. Thank you. Thank you folks. The case to be started will be submitted. The court will stand in recess for today.
judges: Reinhardt, Rymer, Thomas